RACHEL KREVANS (CA SBN 116421)
WESLEY E. OVERSON (CA SBN 154737)
LAWRENCE B. BERROYA (CA SBN 194272)
PETER P. MERINGOLO (CA SBN 197136)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

Attorneys for Plaintiff
CHIRON CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CHIRON CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>LABORATORY CORPORATION OF AMERICA HOLDINGS, LABORATORY CORPORATION OF AMERICA, AND NATIONAL GENETICS INSTITUTE,<br><br>Defendants. | Case No.   03-3707 PJH<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION UNDER 28 U.S.C. SECTION 1406(a) AND RULE 12(b)(3) TO TRANSFER OR DISMISS FOR IMPROPER VENUE**<br><br>Date:   January 28, 2004<br>Time:   9:00 a.m.<br>Place:  Courtroom of the Honorable Phyllis J. Hamilton |

**NOTICE REGARDING REDACTED OPPOSITION**

UNREDACTED VERSION FILED UNDER SEAL PURSUANT TO RULE 79-5(c)4

# TABLE OF CONTENTS

| | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| I. INTRODUCTION | 1 |
| II. STATEMENT OF FACTS | 2 |
|     A. NGI Offers and Performs Testing Services For It Own Clients In The Northern District of California. | 2 |
|     B. NGI Offers and Performs Testing Services For LabCorp Clients in the Northern District of California. | 4 |
| III. ARGUMENT | 6 |
|     A. Venue is Proper Under 1400(b) Because NGI Has Sufficient Contacts and Business Dealings In This District. | 6 |
|         1. General Jurisdiction in the Northern District is Reasonable and Just Because NGI has had Contacts with Customers in the Northern District of California for Several Years. | 7 |
|         2. Venue Is Also Proper Because NGI Specifically Offers HIV Tests —The Tests At The Heart of Chiron's Cause of Action —To Customers In The Northern District. | 10 |
|     B. Section 1391(b)(1) Provides An Alternative Basis For Venue In This Case. | 11 |
| IV. CONCLUSION | 13 |

# TABLE OF AUTHORITIES

Page(s)

## CASES

3D Sys., Inc. v. Aarotech Labs., Inc.
  160 F.3d 1373 (Fed. Cir. 1998)..................................................................................... 7

AMP Inc. v. Methode Elecs. Inc.
  823 F. Supp. 259 (M.D. Pa. 1993).................................................................................. 8

Akro Corp. v. Luker
  45 F.3d 1541 (Fed. Cir. 1995)............................................................................... 10, 11

Amazon.com, Inc. v. Barnesandnoble.com, Inc.
  73 F. Supp. 2d 1228 (W.D. Wash. 1999),
  vacated on other grounds, 239 F.3d 1343 (Fed. Cir. 2001)........................................ 11

Anrig v. Ringsby
  603 F.2d 1319 (9th Cir. 1978)....................................................................................... 6

Archive Corp. v. Cipher Data Prods., Inc.
  1988 U.S. Dist. LEXIS 17190 (C.D. Cal. 1988)......................................................... 11

Biometics v. New Womyn
  112 F. Supp. 2d 869 (E.D. Mo. 2000)..................................................................... 7, 11

Burger King Corp. v. Rudzewicz
  471 U.S. 462 (1985)...................................................................................................... 7

Imagineering, Inc. v. Van Klassens, Inc.
  797 F. Supp. 329 (S.D.N.Y. 1992)................................................................................ 7

Int'l Shoe Co. v. Washington
  326 U.S. 310 (1945)................................................................................................. 7, 10

LSI Indus. v. Hubbell Lighting, Inc.
  232 F.3d 1369 (Fed. Cir. 2000)........................................................................... 7, 8, 10

Modesto City Schs. v. Riso Kagaku Corp.
  157 F. Supp. 2d 1128 (E.D. Cal. 2001)....................................................................... 10

Neogen Corp. v. Neo Gen Screening, Inc.
  282 F.3d 883 (6th Cir. 2002)......................................................................................... 7

Toombs v. Goss
  768 F. Supp. 62 (W.D.N.Y. 1991).............................................................................. 12

Urspach v. Greenblum
  968 F. Supp. 707 (S.D. Ga. 1996)............................................................................... 10

VE Holding Corp. v. Johnson Gas Appliance Co.
  917 F.2d 1574 (Fed. Cir. 1990)............................................................................... 6, 12

*Wayne Pigment Corp. v. Halox & Hammond Group, Inc.*
   220 F. Supp. 2d 931 (E.D. Wis. 2002) .................................................................................. 11

## STATUTES

Federal Rule of Civil Procedure
   Rule 12(b)(3) ........................................................................................................................ 2

28 U.S.C.
   § 1391(b)(1) ................................................................................................................... 1, 11
   § 1391(c) ......................................................................................................................... 6, 12
   § 1400(b) ........................................................................................................................ 6, 12
   § 1406(a) ......................................................................................................................... 1, 6

35 U.S.C.
   §271(a) ................................................................................................................................ 11

## OTHER AUTHORITIES

Chisum on Patents
   § 21.03(3) ............................................................................................................................. 6

## I. INTRODUCTION

In this action, Chiron Corporation ("Chiron"), which has its headquarters in Emeryville in the East Bay Area, alleges that defendants National Genetics Institute ("NGI"), Laboratory Corporation of America ("LabCorp"), and Laboratory Corporation of America Holdings ("LabCorp Holdings") infringe Chiron's patent on methods for detecting Human Immunodeficiency Virus ("HIV"). By this motion, Defendants seek to transfer or dismiss Chiron's case in its entirety pursuant to 28 U.S.C. Section 1406(a) because they argue that venue is improper. However, neither LabCorp nor LabCorp Holdings disputes that the Northern District of California is a proper venue for an action against them. Rather, *only* NGI, a wholly-owned subsidiary of LabCorp Holdings and a California corporation with its headquarters in Los Angeles, claims that it is not subject to venue in this district. Thus, the sufficiency of NGI's contacts with this district is the sole issue for the Court to decide.

Contrary to NGI's claim, its contacts with the Northern District of California satisfy applicable venue standards. In fact, NGI's contacts with this district have been substantial over the past several years. NGI offers blood and plasma tests, including HIV tests, to customers located in this district. In the past two years alone, NGI has performed over _____ tests for these customers. Apart from these tests, NGI also has performed over _____ tests for LabCorp customers that reside in this district. In the Northern District of California and elsewhere, LabCorp sales representatives disseminate information to its customers about NGI's testing capabilities. In addition, NGI offers customers located in this district continuous, around-the-clock access to test results via the internet and provides information to these customers about its tests through advertisements in nationally circulated journals, on its own website, and on LabCorp's website.

Moreover, the extent of NGI's contacts with this district cannot be measured in isolation. NGI maintains a close – even indistinguishable – relationship with both LabCorp and NGI's parent LabCorp Holdings. NGI receives *no* revenue for the _____ of tests it performs for LabCorp customers. LabCorp recognizes *all* of the revenue earned by NGI's performance of these tests. The NGI CEO reports to the Medical Director of LabCorp Holdings. NGI has a two-

PL.'S OPP. TO DEFS.' MOT. UNDER 28 U.S.C. § 1406(A) & RULE 12(B)(3) TO TRANSFER OR DISMISS FOR IMPROPER VENUE — Case No. 03-3707 PJH
sf-1608360

1

member board of directors, and both are executives of LabCorp Holdings. LabCorp Holdings identifies NGI as one of its "primary testing" facilities, and LabCorp and Labcorp Holdings serve vital sales and marketing roles for NGI. As such, LabCorp's and LabCorp Holdings' contacts with this district are, in large part, NGI's contacts, as well.

Moreover, many of NGI's contacts with this district relate to Chiron's cause of action for patent infringement. Both NGI and LabCorp offer to sell NGI's HIV test to customers in the Northern District of California, and distribute information about these tests here. NGI sends requisition forms to its customers in this district, and elsewhere, that allow customers to order HIV tests. These HIV tests are at the heart of Chiron's complaint.

More generally, NGI's position that because it is supposedly blind to the source of the specimens tested it is not subject to suit here is not credible. NGI provides its clients with sophisticated testing services to detect the presence of viruses in blood and plasma specimens, including tests for HIV. The Northern District contains several counties in which HIV is a significant health issue. NGI, which has its headquarters and its testing facilities in Los Angeles, certainly knows that such services are in high demand in this district. It also knows that its affiliate LabCorp offers NGI's services in this district. It cannot now claim unfairness when it is sued in this district relating to its HIV test. In sum, NGI has sufficient contacts with this district such venue is proper, and Defendants' motion should be denied.

## II. STATEMENT OF FACTS

### A. NGI Offers and Performs Testing Services For It Own Clients In The Northern District of California.

HIV is a major health concern in San Francisco and other counties and cities that encompass the Northern District of California. (*See* Declaration of Peter Meringolo ("Meringolo Decl."), Ex. J and Chiron's Request for Judicial Notice, filed herewith.) NGI offers to sell clinical laboratory testing services to its customers in the Northern District of California. (*See* Decl. of Michael A. Aicher in Support of Defs.' Mot. Under 28 U.S.C. § 1406(a) and Rule 12(b)(3) to Transfer or Dismiss for Improper Venue ("Aicher Decl.") ¶6. *See also* Meringolo Decl., Ex. A, (Deposition of Michael A. Aicher ("Aicher Dep.") at 36:17-37:5.) NGI advertises

PL.'S OPP. TO DEFS.' MOT. UNDER 28 U.S.C. § 1406(A) & RULE 12(B)(3) TO TRANSFER OR DISMISS FOR IMPROPER VENUE — Case No. 03-3707 PJH
sf-1608360

2

1  these testing services in nationally circulated journals and operates a nationally accessible
2  website. Aicher Decl. ¶5. Customers in this district can order these tests by simply checking a
3  box on a NGI Laboratory Testing Requisition Form. *See* Meringolo Decl., Ex. A at 66:25-67:20,
4  68:25-69:2 and Dep. Ex. 34.) Among the tests that NGI offers for sale to customers in this
5  district are HIV tests. (*Id.* at 35:20-23, 87:18-88:2 and Dep. Ex. 35.)

6  Since October 2001, NGI has conducted over ____ tests for its customers located in the
7  Northern District of California, including ____ HIV tests for
8  ____ (Meringolo Decl., Ex. A at 43:16-44:19, 48:11-
9  49:13, and Dep. Exs. 28, 29; *see also* Ex. D, (NGI's Resp. to Interrog. No. 2.) NGI has
10 approximately ____ entities located in the Northern District of California listed in its customer
11 database. (*Id.*, Ex. A at 38:9-39:5 and Dep. Ex. 27.) These customers include many of the
12 primary hospitals in the district:
13
14 (*Id.* at Dep. Ex.
15 27.)

16  NGI's customers in this district also include several major corporations with significant
17 ties to this district such as ____, which has its headquarters in
18 Pleasanton. (Meringolo Decl., Ex. I.) NGI currently has a written agreement to provide blood
19 testing services to ____ (*Id.*, Ex. A at 75:16-21.) Since October 2001, NGI has performed well
20 over 1700 tests on specimens provided by Roche. (*Id.* at 74:25-75:11 and Dep. Exs. 28 and 29.)
21 NGI also has a license agreement with ____ (*Id.* at 74:16-19.)
22  NGI performs testing services for ____ which operates blood
23 collection facilities in Oakland, pursuant to a written agreement (the "____ Agreement"). (*See*
24 Decl. of Gary Ziccardi ("Ziccardi Decl.")), ¶¶ 2-3, filed herewith.) The blood specimens
25 collected in Oakland are eventually tested by NGI. (*Id.* ¶¶ 4-5.)
26  NGI also performed at least twelve tests on specimens for Chiron between 1999 and 2001
27 for a cost of approximately $3500. (Decl. of Evelyn Palas, Ex. A, filed herewith; *see also*
28 Meringolo Decl., Ex. A at 52:25-54:18 and Dep. Ex. 31.)

Finally, NGI has made it easy for customers in this district to access testing services and test results. NGI offers its customers, including customers in the Northern District of California, around-the-clock access to test results and reports via the Internet through NGI's Remote Access Services. (Meringolo Decl., Ex. A at 83:18-84:23 and Dep. Ex. 41.) Through a collaboration with            . NGI offered a "SuperQuant program for easy access to state of the art viral elucidation." (*Id.* at 60:25-63:18 and Dep. Ex. 32.) When a client enrolled in this program, the client received an NGI Starter Pack, which provides: "materials for collecting and shipping samples to NGI," "sample instructions for drawing and handling specimens," and "preprinted, customized requisitions." (*Id.* at Dep. Ex. 32, p. LC000058) NGI sends its test results to customers in this district electronically, by fax, or through the mail. *See id.*, Ex. D (NGI's Resp. to Interrog. No. 9).)

      **B.**    **NGI Offers and Performs Testing Services For LabCorp Clients in the Northern District of California.**

In addition to servicing its own customers, NGI provides testing services for customers of its affiliate LabCorp, which offers NGI tests to LabCorp customers located in the Northern District of California, including NGI's HIV tests. (Meringolo Decl., Ex. B (Dep. of Jeffrey Glenn ("Glenn Dep.") at 38:21-39:7; 43:15-44:1, 54:7-14.) LabCorp customers in the Northern District of California can request NGI tests by simply checking a box on a LabCorp requisition form. (*Id.* at 11:20-25; 41:8-24, 63:22-64:1 and Dep. Ex. 12.) LabCorp customers can order NGI tests over the internet through e-LCM, which can be accessed through LabCorp's website. (*Id.* at 29:5-22 and Dep. Ex. 11.) Since October 2001, NGI has performed       tests for LabCorp's customers located in the Northern District of California. (*See id.*, Ex. D (NGI's Resp. to Interrog. No. 5.)

LabCorp and its sales representatives provide information about NGI tests to LabCorp customers. (*See id.*, Ex. E (LabCorp's Resp. to Interrog. No. 10).) Information about NGI's tests is also available on LabCorp's website, accessible to potential customers in this district. (*Id.*, Ex. B at 33:8-17, 60:24-61:7, 62:6-63:9, and Dep. Exs. 19 and 20.) LabCorp's sales representatives, including sales representatives in the Northern District of California, have access to information about NGI and NGI's tests. For example, NGI's tests are listed on a LabCorp marketing

PL.'S OPP. TO DEFS.' MOT. UNDER 28 U.S.C. § 1406(A) & RULE 12(B)(3) TO TRANSFER OR DISMISS FOR IMPROPER VENUE — Case No. 03-3707 PJH
sf-1608360

4

document titled LabCorp's One-Source Molecular Test Catalog for Infectious Diseases. (*Id.* at 12:7-13:7 and Dep. Ex. 4.) This catalog is available to LabCorp sales representatives. (*Id.* at 13:19-12.) It also can be found on the www.labcorp.com website. (*See* Meringolo Decl., ¶ 7 and Ex. H.) LabCorp sales representatives, including representatives in the Northern District of California, receive training about technical information related to NGI tests and also have access to lab bulletins describing NGI's tests. (*Id.*, Ex. B at 19:12-25, 20:24-21:6, 21:11-15, and Dep. Ex. 6.)

NGI, LabCorp and NGI's parent, LabCorp Holdings, are closely connected; indeed, NGI is operated largely as if it were a division of LabCorp. NGI receives no revenue for providing testing services to LabCorp's customers. (*Id.*, Ex. A at 19:25-20:7.) Instead, LabCorp itself recognizes the revenue for the tests performed by NGI for LabCorp's customers located in the Northern District of California. (*Id.*, Ex. B at 36:16-21, 48:23-49:6.) The NGI CEO reports to Myla Goldman, Executive Vice President, Chief Scientific Officer and Medical Director of LabCorp Holdings. (*See id.*, Ex. A at 11:6-21; Ex. C (LabCorp 2002 Annual Report) at 50.) NGI has a two member board of directors, Wesley Elingburg and Bradford Smith. (*Id.*, Ex. A at 12:20-13:4.) Mr. Elingburg is Executive Vice President, Chief Financial Officer and Treasurer of LabCorp Holdings, and Mr. Smith is Executive Vice President and Secretary of LabCorp Holdings. (*See id.*, Ex. C at 50.) Mr. Smith signed the Agreement on behalf of both LabCorp Holdings and NGI. (*Id.*, Ex. A at Dep. Ex. 36.) NGI has no marketing or public relations department. (*Id.* at 13:19-22, 15:12-13.) LabCorp Holdings advertises and issues press releases about NGI and NGI tests, including NGI's HIV tests. (*Id.*, Ex. B at 14:18-20, 15:17-20, and Dep. Exs. 13-14.) These press releases are available on the LabCorp website. (*See id.* at ¶ 6, Exs. F and G.) NGI is listed as a "Primary Testing and Distribution Center" on LabCorp's website. (*Id.*, Ex. B at 71:4-18 and Dep. Ex. 21.)[1]

---

[1] The interconnectedness of LabCorp, LabCorp Holdings, and NGI causes confusion even for Defendants' employees. For example, the NGI CEO does not know which company employs the person to whom he reports. (*See* Meringolo Decl., Ex. A at 11:6-21.) Also, the LabCorp Vice President of California Laboratory Operations does not know which entity maintains www.labcorp.com, the website utilized by LabCorp customers and sales representatives. (*See id.*, Ex. B at 44:23-45:3.)

PL.'S OPP. TO DEFS.' MOT. UNDER 28 U.S.C. § 1406(A) & RULE 12(B)(3) TO TRANSFER OR DISMISS FOR IMPROPER VENUE — Case No. 03-3707 PJH
sf-1608360

5

III. ARGUMENT

Defendants move this Court for an order transferring or dismissing this case pursuant to 28 U.S.C § 1406(a). Section 1406(a) provides

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

*See* 28 U.S.C § 1406(a). LabCorp and LabCorp Holdings do not dispute that this district is a proper venue for an action against them. Thus, the only proper issue for the Court to decide is whether Chiron's case against NGI should be dismissed or transferred. *See, e.g. Anrig v. Ringsby*, 603 F.2d 1319, 1324 (9th Cir. 1978) (holding that "'the defense of improper venue is personal to the party to whom it applies" and unless the party for whom venue is improper is an indispensable party, "the accepted and more just procedure is to sever . . . and dismiss or transfer those claims against those parties as to whom venue is improper.'")(citation omitted); *see also* Chisum on Patents § 21.03(3)(e) (noting that because "related infringers" are jointly and severally liable they need not all be joined in one suit) (citations omitted). Because NGI's contacts with this district are sufficient to subject NGI to either general or specific jurisdiction, the fundamental inquiry of proper venue under the standard set forth in 28 U.S.C. § 1400(b), the motion must be denied.

A. **Venue is Proper Under 1400(b) Because NGI Has Sufficient Contacts and Business Dealings In This District.**

1400(b) provides that:

> Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.

A corporate defendant "resides" in the venue in which he is subject to personal jurisdiction. 28 U.S.C. § 1391(c). *See also VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1580 (Fed. Cir. 1990). For purposes of venue in a multidistrict state, a "corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." 28 U.S.C. § 1391(c).

PL.'S OPP. TO DEFS.' MOT. UNDER 28 U.S.C. § 1406(A) & RULE 12(B)(3) TO TRANSFER OR DISMISS FOR IMPROPER VENUE — Case No. 03-3707 PJH
sf-1608360

6

A defendant is subject to personal jurisdiction where it has "sufficient contacts or ties with the state of the forum to make [personal jurisdiction] reasonable and just, according to our traditional conception of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945). Jurisdiction can be either general or specific. Where a defendant's contacts are "systematic and continuous," that defendant is subject to the general jurisdiction of a forum. *See LSI Indus. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000).[2] In such a case, plaintiff's cause of action need not bear any relation to defendants' contacts. *Id.* Where a defendant only has minimum contacts with the forum, that defendant will be subject to specific jurisdiction if the defendant's contacts relate to plaintiff's cause of action. *Id.* Specific jurisdiction may be found "even if those contacts are 'isolated and sporadic'." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985). *See also, e.g., Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883 (6th Cir. 2002) (venue proper where defendant had interactive website and had tested 14 blood samples from district, but conducted 200,000 tests outside of the state); *Biometics v. New Womyn*, 112 F. Supp. 2d 869, 873 (E.D. Mo. 2000) (venue proper where defendant sold two accused products in district along with a passive website advertising the product for sale); *Imagineering, Inc. v. Van Klassens, Inc.*, 797 F. Supp. 329, 332 (S.D.N.Y. 1992) (venue proper where defendant had sold two allegedly infringing rocking chairs in district).

Applying either analysis, NGI is subject to personal jurisdiction in this district.

    1.    **General Jurisdiction in the Northern District is Reasonable and Just Because NGI has had Contacts with Customers in the Northern District of California for Several Years.**

Neither the Federal Circuit nor the Supreme Court has established "a specific test to follow when analyzing whether a defendant's activities within a state are 'continuous and systematic.'" *LSI Indus.*, 232 F.3d at 1375. Rather, "a court must look at the facts of each case to make such a determination." *Id.* In *LSI*, defendant had no office or sales force in the state, but made sales in the state through a distribution network. Based upon the sales made by defendant

---

[2] Questions of jurisdiction in patent cases are governed by Federal Circuit case law. *See 3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1377 (Fed. Cir. 1998).

PL.'S OPP. TO DEFS.' MOT. UNDER 28 U.S.C. § 1406(A) & RULE 12(B)(3) TO TRANSFER OR DISMISS FOR IMPROPER VENUE — Case No. 03-3707 PJH
sf-1608360

7

over the course of "several years," and upon its "broad distribut[ion] network," the Federal Circuit found that defendant "maintains 'continuous and systematic' contacts with Ohio . . . [and, therefore] is subject to general jurisdiction in Ohio under the Due Process Clause." *Id.* at 1375.

Similarly, in *AMP Inc. v. Methode Elecs. Inc.*, 823 F. Supp. 259, 267 (M.D. Pa. 1993), defendant had no office and no sales force located in the state. Rather, it made sales to customers in the state who called defendant by referring those customers to distributors and agents located outside the state. The total amount of sales to customers located in the state was an insubstantial percentage of defendant's overall revenue. However, the court held that defendant's contacts were "continuous and substantial" and subjected defendant to general jurisdiction in the state. Although defendant's sales represented a small part of defendant's total sales, they were, nonetheless "substantial, and made on a regular basis." *Id.* at 267. Moreover, defendant had customers with "house accounts," which, as noted by the court, "indicates that it has established ties with Pennsylvania customers and has, apparently, cultivated such ties over the years even if it may not have made a concerted effort to expand in Pennsylvania." *Id.* Finally, the court held that the fact that defendant had no office or sales force in Pennsylvania was "not controlling" and "does not shield it from jurisdiction." *Id.* at 267-68. Rather, what was controlling was the fact that defendant knew that its products would end up in the forum. *Id.*

Applying this reasoning here, NGI's contacts with the Northern District are more than sufficient. According to its internal customer database, NGI has had well over 100 customers in the Northern District, including Chiron itself. In the past two years alone, NGI has performed ‐            of tests for customers located in the Northern District of California. NGI also has performed over            ' tests for LabCorp customers who are located in this district. NGI sends tests results to its customers here by fax and through the mail, and provides its Northern District customers with 24/7 access to its computerized test result database over the Internet.

NGI has ongoing relationships with companies with a significant presence in the Bay Area, including Chiron. For example, NGI maintains an ongoing relationship with `            located in Pleasanton, CA. NGI has performed well over            tests for            NGI also has an

PL.'S OPP. TO DEFS.' MOT. UNDER 28 U.S.C. § 1406(A) & RULE 12(B)(3) TO TRANSFER OR DISMISS FOR IMPROPER VENUE — Case No. 03-3707 PJH
sf-1608360

8

ongoing relationship with           with whom it has a long term contract for testing blood and plasma collected by           including blood collected in          ' facility in Oakland, California.

Although NGI has no sales force in the Northern District, NGI disseminates information to customers in the district. NGI maintains continuous contact with persons in this district through LabCorp, which distributes materials about NGI's tests, including test requisition forms to LabCorp's customers. NGI also advertises and disseminates information about its services to customers in the Northern District through journals with nationwide circulation and NGI's website, www.ngi.com. (*See* Meringolo Decl., Ex. A at Dep. Ex. 40 and 41; Aicher Decl. at ¶ 5.) Advertisements and information about NGI's tests are also available on www.labcorp.com, NGI's parent's website. (*See* Meringolo Decl., ¶¶ 6 and 7.)

Nonetheless, NGI argues that it has no contacts with the Northern District of California, refusing to acknowledge the numerous jurisdictional contacts set forth above and feigning ignorance about the origin of the specimens it tests. NGI positions itself as a market leader in HIV and Hepatitis C tests, yet it claims that it has no idea that specimens to be tested would originate in the Northern District of California. This claim flies in the face of the disproportionately large number of persons in this district with HIV or who might be interested in HIV testing.

Nor can Defendants properly and easily distinguish LabCorp and LabCorp Holdings' contacts with this venue from NGI's contacts. NGI's relationships with both LabCorp and LabCorp Holdings extend far beyond mere corporate affiliation. LabCorp and LabCorp Holdings provide vital services for NGI. The NGI CEO reports to the Medical Director of LabCorp Holdings. NGI's only two board members are executives of LabCorp Holdings. At least one of these board members has signed a contract on behalf of both NGI and LabCorp Corp Holdings, and NGI has no marketing or public relations department. Instead, LabCorp Holdings prepares marketing materials and press releases about NGI and NGI tests, including NGI's HIV tests. LabCorp Holdings provides information about NGI, and lists NGI as a "Primary Testing and Distribution Center" on its website. And, even though NGI has performed           of tests for LabCorp customers, NGI has received no revenue for providing these tests. LabCorp receives

1  and retains fees paid for the tests provided by NGI for LabCorp's customers in this district. As
2  such, LabCorp and LabCorp Holdings' contacts with this venue, which are not disputed here,
3  cannot easily be divorced from NGI.[3] Applying traditional notions of fair play and substantial
4  justice, as the Court must (*see Int'l Shoe*, 326 U.S. at 320; *LSI Indus.*, 232 F.3d at 1375) cannot
5  avoid venue under these circumstances.

6  Because of NGI's contacts, NGI is subject to general jurisdiction in the Northern District
7  of California. As a result, venue in this district is appropriate.

### 2. Venue Is Also Proper Because NGI Specifically Offers HIV Tests —The Tests At The Heart of Chiron's Cause of Action — To Customers In The Northern District.

The Federal Circuit has adopted a three-part test to analyze specific personal jurisdiction in patent cases: (1) the defendant must purposefully direct activities at residents in the forum; (2) the cause of action or claim must arise out of, or relate to, the activities directed at the forum; and (3) and the exercise of personal jurisdiction in that forum must be fair and reasonable. *Akro Corp. v. Luker*, 45 F.3d 1541, 1545-46 (Fed. Cir. 1995). Each part of this test is satisfied here.

First, as shown above, NGI purposefully directs its activities at residents in the Northern District of California. NGI offers HIV tests to customers in the Northern District through its nationwide advertising efforts, its website, and its test requisition forms. NGI's HIV tests are also offered to customers in this district through LabCorp's sales force. The fact that the tests are ultimately performed in Los Angeles is immaterial. *See Urspach v. Greenblum*, 968 F. Supp. 707, 711 (S.D. Ga. 1996) (holding a medical corporation had sufficient contacts with Georgia for personal jurisdiction, due to its screening specimens received from a Georgia medical clinic, especially where the corporation performing the tests "must have known that [the results] were being sent to the Medical Clinic [in Georgia].")

Second, NGI's activities relate to Chiron's patent infringement cause of action. In its complaint, Chiron explicitly alleges that defendants, including NGI, are "offering for sale a

---

[3] *See Modesto City Schs. v. Riso Kagaku Corp.*, 157 F. Supp. 2d 1128, 1133 (E.D. Cal. 2001) (holding that subsidiary was the general agent of parent for jurisdictional purposes because subsidiary provided a "vital service" to parent and served as parent's "sole sales and marketing conduit in the" jurisdiction).

PL.'S OPP. TO DEFS.' MOT. UNDER 28 U.S.C. § 1406(A) & RULE 12(B)(3) TO TRANSFER OR DISMISS FOR IMPROPER VENUE — Case No. 03-3707 PJH
sf-1608360

10

method for detecting HIV that is covered by one or more claims of Chiron's" patent without Chiron's authorization. A person or entity who "without authority makes, uses, <u>offers to sell</u>, or sells any patented invention, within the United States . . . during the term of the patent therefor, infringes the patent." 35 U.S.C. §271(a) (emphasis added). By offering to sell its HIV tests to customers located around the country, including customers located in the Northern District of California, even if no customer ever accepted the offer, NGI has committed acts of infringement in this district. Moreover, NGI had already conducted HIV tests for its customers in the Northern District of California before the issuance of Chiron's patent, and its offers to sell continue today. (*See, e.g.,* Meringolo Decl., Ex. A at Dep. Ex. 41.) NGI's activities in this district undoubtedly relate to Chiron's cause of action. *See Wayne Pigment Corp. v. Halox & Hammond Group, Inc.*, 220 F. Supp. 2d 931, 933 (E.D. Wis. 2002) (finding specific jurisdiction where defendant advertised the allegedly infringing product on its website and sent eight samples to potential customers in the forum); *see also Biometics*, 112 F. Supp. 2d at 873 (holding that defendant's website constitutes an offer of sale).

Third, Defendants have not met their burden to show "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Akro Corp.*, 45 F.3d at 1549. To the contrary, jurisdiction here is eminently reasonable. NGI offers HIV testing services to customers in the district and customers who collect blood in the district — a district suffering from high levels of HIV infection. By offering HIV tests in the Northern District of California, NGI "purposefully availed itself of the privilege of conducting activities [in this district] such that it could reasonably anticipate being haled into [the court in this district] in a lawsuit relating to those activities." *Wayne Pigment*, 220 F. Supp. 2d at 933. Thus, venue in this district is proper.

**B. Section 1391(b)(1) Provides An Alternative Basis For Venue In This Case.**

28 U.S.C. Section 1391(b)(1) arguably establishes an alternative basis for venue in this case. *See, e.g., Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 73 F. Supp. 2d 1228, 1239 (W.D. Wash. 1999) (*vacated on other grounds*, 239 F.3d 1343 (Fed. Cir. 2001) (finding proper venue under 1391(b)(1), as well as under 1400(b), in a patent case); *see also Archive Corp. v. Cipher*

PL.'S OPP. TO DEFS.' MOT. UNDER 28 U.S.C. § 1406(A) & RULE 12(B)(3) TO TRANSFER OR DISMISS FOR IMPROPER VENUE — Case No. 03-3707 PJH
sf-1608360

11

*Data Prods., Inc.,* 1988 U.S. Dist. LEXIS 17190, *2 (C.D. Cal. 1988) (same). Under Section 1391(b)(1),

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same state. . . .

*See* 28 U.S.C. § 1391(b)(1). A corporate defendant "shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c).

    This case is a multi-defendant action and was brought in a multi-district state. Section 1400(b) is silent about venue in multi-party/multi-district situations, and neither the Federal Circuit nor the Supreme Court have discussed the applicability of 1391(b)(1) to patent infringement cases in such a context. *But see Toombs v. Goss,* 768 F. Supp. 62, 65 (W.D.N.Y. 1991) (stating "Congress has not created an exception to § 1400(b) in cases involving multiple defendants . . ."). The Federal Circuit has noted, however, that "authorities have long argued that venue in patent infringement actions should be no different than in other civil cases." *VE Holding Corp.,* 917 F.2d at 1583.

    Here, there is no dispute that all Defendants reside in, and are subject to personal jurisdiction in, the State of California. Likewise, there is no dispute that two defendants, LabCorp and LabCorp Holdings, are subject to venue in the Northern District of California. The third defendant, NGI, although arguing that it lacks sufficient venue-related contacts, has substantial contacts with this district nonetheless. Under the circumstances, venue is proper under 1400(b) and also should be deemed proper under Section 1391(b)(1).

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to transfer or dismiss should be denied in its entirety.

Dated: December 31, 2003

RACHEL KREVANS
WESLEY E. OVERSON
LAWRENCE B. BERROYA
PETER P. MERINGOLO

MORRISON & FOERSTER LLP

By: *(signature)*
Peter P. Meringolo

Attorneys for Plaintiff
CHIRON CORPORATION