ALEXANDER L. BRAINERD (Bar No. 042722)
M. PATRICIA THAYER (Bar No. 090818)
CHRISTINE SAUNDERS HASKETT (Bar No. 188053)
HELLER EHRMAN WHITE & McAULIFFE LLP
333 Bush Street
San Francisco, California 94104-2878
Telephone:    (415) 772-6000
Facsimile:    (415) 772-6268

JAMES W. DABNEY
STEPHEN S. RABINOWITZ
FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP
One New York Plaza
New York, New York 10004
Telephone:    (212) 859-8000
Facsimile:    (212) 859-4000

Attorneys for Defendants
LABORATORY CORPORATION OF AMERICA HOLDINGS,
LABORATORY CORPORATION OF AMERICA, and
NATIONAL GENETICS INSTITUTE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CHIRON CORPORATION, | Case No. 03-3707 PJH |
| Plaintiff, | **DEFENDANTS' REPLY IN SUPPORT OF MOTION UNDER 28 U.S.C. § 1406(a) AND RULE 12(b)(3) TO TRANSFER OR DISMISS FOR IMPROPER VENUE** |
| vs. | |
| LABORATORY CORPORATION OF AMERICA HOLDINGS, LABORATORY CORPORATION OF AMERICA, AND NATIONAL GENETICS INSTITUTE, | Date:    January 28, 2004<br>Time:    9:00 a.m.<br>Place:    Courtroom of the Honorable Phyllis J. Hamilton |
| Defendants. | |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...............................................................................................1

II.   ARGUMENT ....................................................................................................2

    A.  In a Patent Infringement Cause of Action, Venue is Governed
        Exclusively By the Patent Venue Statute, 28 U.S.C. § 1400(b),
        and Not By the General Venue Statute, 28 U.S.C. § 1391(b) ...............2

    B.  Chiron Has Failed to Show That Venue Is Proper as to NGI Under
        28 U.S.C. § 1400(b), the Patent Venue Statute ...............................4

        1.  NGI Would Not Be Subject to Specific Personal Jurisdiction in This
            District If the Northern District of California Were a Separate State .........4

            (a)  NGI Has Never Used the Accused Methods in the Northern
                District of California ..........................................................5

            (b)  NGI Has Never Sold or Offered to Sell The Accused Methods
                in The Northern District of California ...................................5

                (i)  NGI's activities do not constitute an "offer to sell"
                    within the meaning of 35 U.S.C. § 271(a) ..........................6

                (ii)  NGI has never offered to perform the accused methods
                    in the Northern District of California .................................8

        2.  NGI Would Not be Subject to General Personal Jurisdiction in This
            District If the Northern District of California Were a Separate State .........8

III.  CONCLUSION ...............................................................................................12

TABLE OF AUTHORITIES

Page

**Cases**

*3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373 (1998) ......................................... 4, 6, 11

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 73 F. Supp. 2d 1228 (W.D. Wash. 1999),
    *vacated*, 239 F.3d 1343 (Fed. Cir. 2001) ........................................................................ 4

*America Protein Corp. v. AB Volvo*, 844 F.2d 56 (2d Civ. 1988) ....................................... 11

*AMP Inc. v. Methode Elecs. Inc.*, 823 F. Supp. 259 (M.D. Pa. 1993) ................................ 11

*Archive Corp. v. Cipher Data Prods., Inc.*, 1988 U.S. Dist. LEXIS 17190 (C.D. Cal. 1988) ........... 4

*Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082 (9th Cir. 2000) ................. 9

*Bayer AG v. Housey Pharms., Inc.*, 340 F.3d 1367 (Fed. Cir. 2003) ................................. 8

*Biometics, LLC v. New Womyn, Inc.*, 112 F. Supp. 2d 869 (E.D. Mo. 2000) ....................... 7

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ................................................. 10

*Congoleum Corp. v. DLW Aktiengesellschaft*, 729 F.2d 1240 (9th Cir. 1984) ..................... 9

*CVI/Beta Ventures, Inc. v. Tura LP*, 905 F. Supp. 1171 (E.D.N.Y. 1995), *rev'd on other grounds*,
    112 F.3d 1146 (Fed. Cir. 1997) .................................................................................. 3

*Dimensional Media Assocs. Inc. v. Optical Prods. Dev. Corp.*, 42 F. Supp. 2d 312 (S.D.N.Y.
    1999) ..................................................................................................................... 3

*Doe v. Unocal*, 248 F.3d 915 (9th Cir. 2001) .............................................................. 11

*Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222 (1957) ................................. 2

*Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408 (1984) ................................. 9

*HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304 (Fed. Cir. 1999) ....................................... 6

*Imagineering, Inc. v. Van Klassens, Inc.*, 797 F. Supp. 329 (S.D.N.Y. 1992) ................... 3, 7

*LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369 (Fed. Cir. 2000) ....................... 10

*LSI Indus., Inc. v. Hubbell Lighting, Inc.*, 64 F. Supp. 2d 705 (S.D. Ohio 1999), *rev'd*, 232 F.3d
    1369 (Fed. Cir. 2000) ............................................................................................ 11

*Mahurkar v. C.R. Bard, Inc.*, No. 01-C-8452, 2003 WL 355636 (N.D. Ill. Feb. 13, 2003) ........ 7

*Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544 (Fed. Cir. 1990) ................... 11

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 243 F. Supp. 2d 1073 (C.D. Cal. 2003) ........ 9

*Mickowski v. Visi-Trak Corp.*, 36 F. Supp. 2d 171 (S.D.N.Y. 1999) ................................. 3

Page

*Modesto City Schools v. Riso Kagaku Corp.*, 157 F. Supp. 2d 1128 (E.D. Cal. 2001) .................. 11

*Moldflow Corp. v. Simcon, Inc.*, No. A.02-12123 RCL, 2003 WL 23010243 (D. Mass. Dec. 22, 2003) ......................................................................................................................... 7, 8

*Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883 (6th Cir. 2002) ................................. 8

*North Am. Philips Corp. v. Am. Vending Sales, Inc.*, 35 F.3d 1576 (Fed. Cir. 1994) ............... 4

*Pfaff v. Wells Electronics, Inc.*, 525 U.S. 55 (1998) ................................................................. 6

*Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491 (9th Cir. 1979) ...................... 4

*Quality Tubing, Inc. v. Precision Tube Holdings Corp.*, 75 F. Supp. 2d 613 (S.D. Tex. 1999) ......... 8

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355 (Fed. Cir. 1998) ............. 10, 11

*Remley v. Lockheed Martin Corp.*, No. C-00-2495 CRB, 2001 WL 681257 (N.D. Cal. June 4, 2001) ................................................................................................................................. 4

*Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246 (Fed. Cir. 2000) ................................ 6, 12

*Schnell v. Peter Eckrich & Sons, Inc.*, 365 U.S. 260 (1961) ................................................... 2

*Stairmaster Sports/Med. Prods., Inc. v. Pacific Fitness Corp.*, 916 F. Supp. 1049 (W.D. Wash. 1995), *aff'd*, 78 F.3d 602 (Fed. Cir. 1996) ......................................................................... 10

*Toombs v. Goss*, 768 F. Supp. 62 (W.D.N.Y. 1991) ................................................................. 3

*United States v. Bestfoods*, 524 U.S. 51 (1998) ..................................................................... 11

*Urspruch v. Greenblum*, 968 F. Supp. 707 (S.D. Ga. 1996) .................................................... 8

*USA Payments Inc. v. Hotel Ramada*, No. C-01-1450 VRW, 2001 WL 764923 (N.D. Cal. June 21, 2001) ........................................................................................................................... 6, 7

*VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574 (Fed. Cir. 1990) ................. 3

*Wayne Pigment Corp. v. Halox*, 220 F. Supp. 2d 931 (E.D. Wis. 2002) .................................. 7

**Statutes**

28 U.S.C. § 1391(c) .................................................................................................................. 4

28 U.S.C. § 1400(b) (West 1993) ........................................................................................... 2, 4

35 U.S.C. § 271 ......................................................................................................................... 5

**Other Authorities**

Restatement (Second) of Contracts ........................................................................................... 6

-iii-

## I.   INTRODUCTION

Defendants hereby reply in support of their motion to transfer this action to the Central District of California or, in the alternative, to dismiss for improper venue.

After full and fair discovery on the issue of venue and transfer, Chiron has failed to sustain its burden of showing that venue is proper as to defendant National Genetics Institute ("NGI") in this judicial district.

As a threshold legal issue, venue in a patent infringement action is governed exclusively by a special patent venue statute, 28 U.S.C. § 1400(b), and cannot be predicated on the general venue statue, § 1391(b).  Chiron's attempt to evade the requirements of § 1400(b) fails as a matter of law.

Under the correct legal standard, Chiron has failed to show that venue is properly laid as to NGI in this judicial district.

It is undisputed that NGI has no place of business in the Northern District.  Accordingly, under 28 U.S.C. §§ 1391(c) and 1400(b), venue would only be proper here if Chiron could demonstrate contacts between NGI and this district that would support the exercise of personal jurisdiction here if the Northern District were a separate state.

Specific personal jurisdiction would be absent.  NGI has never performed the accused method in the Northern District.  On the contrary, all of NGI's testing occurs in Los Angeles.  In fact, NGI has not tested a single sample from the Northern District for HIV since the issuance of Chiron's patent-in-suit.

Nor has NGI ever made an "offer to sell" its HIV tests in the Northern District of California.  First, NGI's activities with respect to the Northern District do not manifest an offer capable of acceptance so as to bind NGI under general contract principles.  It follows that there is no "offer to sell" within the meaning of 35 U.S.C. § 271(a).  Moreover, NGI has never offered to perform an accused HIV test method in the Northern District of California.  Accordingly, NGI's activities with respect to the Northern District would not lead to specific personal jurisdiction.

General personal jurisdiction would likewise be absent.  NGI has no physical presence in the Northern District.  That NGI has some customers with record addresses in the Northern District does

1   not establish general jurisdiction, since that shows at most that NGI does business *with* the Northern

2   District, and not *in* the Northern District.  Under settled law, the jurisdictional contacts of customers

3   like Roche and Aventis cannot be attributed to NGI for purposes of jurisdiction or venue where no

4   act of infringement is shown to have occurred in the district.  Moreover, only a very small

5   percentage of NGI's nucleic acid testing – less than one-half of a percent – is performed for

6   customers, some of whose offices happen to be located in the Northern District.

7          In addition, since NGI does not control or dominate the affairs of its corporate parent

8   (LabCorp Holdings) or affiliate (LabCorp), there are no grounds for attributing their jurisdictional

9   contacts to NGI.  It follows that venue as to NGI is not proper under § 1400(b).  Accordingly, the

10  case should be transferred, or else NGI should be dismissed.

11  **II.   ARGUMENT**

12          **A.   In a Patent Infringement Cause of Action, Venue is Governed
                  Exclusively By the Patent Venue Statute, 28 U.S.C. § 1400(b),**
13          **and Not By the General Venue Statute, 28 U.S.C. § 1391(b)**

14          In a patent infringement cause of action, venue is determined in accordance with a special

15  patent venue provision, which provides:

16                  Any civil action for patent infringement may be brought in the judicial
                    district where the defendant resides, or where the defendant has
17                  committed acts of infringement and has a regular and established place
18                  of business.

19  28 U.S.C. § 1400(b) (West 1993).  There is no merit to Chiron's suggestion that §1391(b)(1)

20  "arguably" establishes an alternative basis for venue.  *See* Opp. at 11-12.

21          The exclusive nature of § 1400(b) is firmly established.  In 1961 the Supreme Court

22  reaffirmed that § 1400(b) is "'the sole and exclusive provision controlling venue in patent

23  infringements actions.' The language of this special statute is clear and specific." *Schnell v. Peter*

24  *Eckrich & Sons, Inc.*, 365 U.S. 260, 262 (1961) (quoting *Fourco Glass Co. v. Transmirra Prods.*

25  *Corp.*, 353 U.S. 222, 229 (1957)).  As the Court emphasized: "The requirement of venue is specific

26  and unambiguous; it is not one of those vague principles which, in the interest of some overriding

27  policy, is to be given a 'liberal construction.'" 365 U.S. at 264 (affirming dismissal for improper

28  venue).

                                                                                                    -2-

In 1988, the scope of § 1400(b) was broadened with respect to corporate defendants by amending § 1391(c) so as to expand the meaning of the term "reside" as it applies to a corporation. In *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1583 (Fed. Cir. 1990), the Federal Circuit confirmed that, for a corporate defendant, the term "resides" in § 1400(b) must be construed in accordance with the newly-expanded definition of § 1391(c). In so holding, however, the Federal Circuit recognized that venue in patent infringement actions would continue to be governed by the special venue provision of § 1400(b), whereas in patent declaratory judgment actions, it would continue to be governed by the general venue statute. *Id.* The effect of *VE Holding* was "to bring the law of venue in patent [infringement] cases *more* in line with venue generally, as well as with other types of patent litigation," though not to erase the distinction completely. *Id.* at 1583-84 (emphasis added).

Thus, in cases decided after *VE Holding*, courts have continued to apply the exclusive venue provision of § 1400(b) to infringement causes of action, even though the interpretation of this section is now informed by § 1391(c). In *Toombs v. Goss*, 768 F. Supp. 62, 65 (W.D.N.Y. 1991), the district court explained that "Congress has not created an exception to Section 1400(b) in cases involving multiple defendants or conspiring defendants" and accordingly applied "the explicit patent venue requirement which Congress has created." *Accord Imagineering, Inc. v. Van Klassens, Inc.*, 797 F. Supp. 329, 332 (S.D.N.Y. 1992) (testing venue for patent infringement claims under § 1400(b) and for non-patent claims under § 1391(a)(1) and § 1391(b)(1)); *accord Dimensional Media Assocs., Inc. v. Optical Prods. Dev. Corp.*, 42 F. Supp. 2d 312, 316-17 (S.D.N.Y. 1999) (dismissing individual defendants for lack of venue under § 1400(b) even though subject to personal jurisdiction); *Mickowski v. Visi-Trak Corp.*, 36 F. Supp. 2d 171, 176-77 (S.D.N.Y. 1999) (same); *CVI/Beta Ventures, Inc. v. Tura LP*, 905 F. Supp. 1171, 1201 (E.D.N.Y. 1995) ("If the requirements for venue under Section 1400(b) are not met, the Court is constrained to dismiss the action, even where the result is inefficient or unfair."), *rev'd on other grounds*, 112 F.3d 1146 (Fed. Cir. 1997).

These settled principles are in no way undermined by dicta in the two cases upon which Chiron relies, in which district courts, without any analysis, stated that venue was proper under both §§ 1391(b) and 1400(b). *See* Opp. at 11-12 (citing *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,

-3-

73 F. Supp. 2d 1228, 1239 (W.D. Wash. 1999), *vacated*, 239 F.3d 1343 (Fed. Cir. 2001) and *Archive Corp. v. Cipher Data Prods., Inc.*, 1988 U.S. Dist. LEXIS 17190, at *2 (C.D. Cal. 1988)).  The strictures of § 1400(b) cannot so easily be evaded.  As shown below, Chiron has failed to satisfy this standard, and therefore has failed to show that venue is properly laid as to NGI.

**B.   Chiron Has Failed to Show That Venue Is Proper as to NGI Under 28 U.S.C. § 1400(b), the Patent Venue Statute**

Chiron has failed to satisfy its burden, as plaintiff, of showing that venue is proper as to NGI in the Northern District of California.  *See Remley v. Lockheed Martin Corp.*, No. C-00-2495 CRB, 2001 WL 681257, at *3 (N.D. Cal. June 4, 2001) ("Plaintiff bears the burden of proving venue.") (applying *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979)).

Under 28 U.S.C. § 1400(b), a defendant may be sued:  (1) in a judicial district where the defendant *resides*, or (2) in a judicial district where the defendant has committed acts of infringement *and has a regular and established place of business*. 28 U.S.C. § 1400(b).  It is undisputed that NGI does not have a place of business in the Northern District of California and, accordingly, that venue cannot be predicated under the second prong of § 1400(b).  To establish venue under the first prong of § 1400(b), Chiron must show that NGI "resides" in this district in that NGI would be subject to personal jurisdiction here if the Northern District of California were a separate state.  *See* 28 U.S.C. § 1391(c).  As shown below, Chiron has failed to demonstrate that NGI has contacts with the Northern District of California that would justify the exercise of either specific or general personal jurisdiction.

**1.   NGI Would Not Be Subject to Specific Personal Jurisdiction in This District If the Northern District of California Were a Separate State**

Personal jurisdiction for a patent cause of action is determined under Federal Circuit law. *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1377-78 (1998).  The Federal Circuit has explained that the "tort" of patent infringement occurs, for jurisdictional purposes, where the infringing act is committed.  *North Am. Philips Corp. v. Am. Vending Sales, Inc.*, 35 F.3d 1576, 1578-79 (Fed. Cir. 1994).  Accordingly, to establish that specific jurisdiction would be proper in the Northern District of California (viewed as a separate state), Chiron must show that NGI has made, used, sold, or offered to sell the claimed invention in this district, or imported the claimed invention

-4-

into this district, during the term of the patent in suit, or has induced or contributed to such infringement in this district. *See* 35 U.S.C. § 271 (defining acts of patent infringement).

But the patent in suit, entitled "*Methods* for detecting Human Immunodeficiency Virus Nucleic Acid," is not directed to products that can be made or sold, but only to certain *methods* for detecting the presence of genetic material from HIV, the causative agent of AIDS. *See* Haskett Decl., Exh. A at cols. 75-78 (setting forth the text of the claims). As shown below, NGI has never used, sold, or offered to sell, in the Northern District of California, the methods claimed in Chiron's patent in suit.

### (a) NGI Has Never Used the Accused Methods in the Northern District of California

It is undisputed that NGI performs all its HIV testing in Los Angeles, California. Aicher Decl. ¶ 6. It therefore follows that NGI has not used the accused methods in the Northern District of California.[1]

### (b) NGI Has Never Sold or Offered to Sell The Accused Methods in The Northern District of California

The record also shows that NGI has never sold or offered to sell the claimed methods in the Northern District of California. Chiron artfully uses the term "tests" to obscure the fact that only *methods of testing* are at issue here, arguing that NGI has committed an infringing act in this district by "offering to sell *its HIV tests* to customers . . . in the Northern District of California . . . ." (Opp. at 11) (emphasis added). That argument fails on multiple grounds. First, Chiron's patent in suit does not claim "tests" but only *methods* of testing, and NGI does not sell "tests," but rather provides services that include the performance – exclusively in Los Angeles – of methods for detecting HIV. Moreover, as shown below, NGI's activities do not constitute an "offer to sell" within the meaning of 35 U.S.C. § 271(a), and NGI has never offered to perform its accused methods in the Northern District of California, or indeed anywhere other than Los Angeles.

---

[1]     In fact, the record shows that since March 11, 2003, the issue date of the patent in suit (*see* Haskett Decl., Exh. A at cover page), NGI has not received even a single sample from the Northern District of California for HIV testing. Aicher Decl. ¶ 7; Meringolo Decl., Exh. D (NGI Resp. to Interrog. No. 8.).

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO TRANSFER OR DISMISS  C 03-3707 PJH

1

           (i)      **NGI's activities do not constitute an "offer to**
                 **sell" within the meaning of 35 U.S.C. § 271(a)**

2

     Contrary to Chiron's contentions (*see* Opp. at 10-11), NGI's nationwide advertising efforts,

3

website, and provision of test requisition forms do not constitute an "offer to sell" its services within

4

the meaning of 35 U.S.C. §271(a). Evolving decisional law has made it clear that the statutory

5

phrase, "offer to sell," is not satisfied by mere advertising and promotional activities, but on the

6

contrary requires the kind of offer that is capable, under traditional contract principles, of acceptance

7

so as to bind the offeror.

8

     In *Aarotech*, the Federal Circuit first addressed the "offer to sell" provision, which was added

9

to the Patent Statute in 1994. 160 F.3d at 1378. The *Aarotech* court found that letters sent into the

10

forum constituted offers to sell, because they gave "a description of the allegedly infringing

11

merchandise and the price at which it can be purchased." *Id.* at 1379. Subsequent interpretation of

12

the "offer to sell" provision in § 271(a) has been influenced by the Supreme Court's decision in *Pfaff*

13

*v. Wells Electronics, Inc.*, 525 U.S. 55 (1998), which applied "the norms of traditional contract law"

14

to interpret the "on sale" provision of § 102(b). Thus, in *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215

15

F.3d 1246, 1255 (Fed. Cir. 2000), the Federal Circuit held that "the meaning of 'offer to sell' is to be

16

interpreted according to its ordinary meaning in contract law, as revealed by traditional sources of

17

authority." (following *Pfaff*). Applying this principle, the *Rotec* court found that no "offer to sell"

18

had been made because the communication in question was not "'a manifestation of willingness to

19

enter into a bargain, so made as to justify another person in understanding that his assent to that

20

bargain is invited and will conclude it.'" *Id.* at 1257 (quoting Restatement (Second) of Contracts);

21

*accord HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1310 n.7 (Fed. Cir. 1999) (holding that offers

22

to donate are not offers to sell and noting that if Congress had contemplated "such implied offers to

23

sell . . . as infringing acts, Congress could have chosen indicia of commercialization rather than the

24

more specific offer to sell.").

25

     Following *Rotec,* the lower courts have rejected efforts by patentees to base personal

26

jurisdiction on mere advertising and promotional activity. In *USA Payments Inc. v. Hotel Ramada*,

27

No. C-01-1450 VRW, 2001 WL 764923 (N.D. Cal. June 21, 2001), this Court held that advertising

28

-6-

1   an allegedly infringing service "through newspaper advertisements, direct mailings and other

2   programs directed at California" did not constitute an offer to sell because it lacked the requisite

3   description of the accused systems and the price at which they can be purchased. *Id.* at *3

4   (dismissing patent infringement action for lack of personal jurisdiction and improper venue). *Accord*

5   *Moldflow Corp. v. Simcon, Inc.*, No. CIV.A.02-12123 RCL, 2003 WL 23010243, at *7-10 (D. Mass.

6   Dec. 22, 2003) (discussing the evolution of the strict "offer to sell" standard and holding that even

7   with pricing information, no offer to sell arose from materials that "lacked terms that are essential to

8   an enforceable contract") (dismissing for lack of personal jurisdiction); *Mahurkar v. C.R. Bard, Inc.*,

9   No. 01-C-8452, 2003 WL 355636, at *6 (N.D. Ill. Feb. 13, 2003) (finding no offer to sell where a

10  defendant's brochure and website advertised the accused device without providing price information

11  and therefore did not manifest the requisite intent to be bound).

12         The advertising materials identified by Chiron do not satisfy the standard of *Rotec* and its

13  progeny for an offer to sell. Chiron fails to identify any document, brochure or advertisement that

14  NGI has directed to the Northern District of California, during the term of the patent in suit, with

15  pricing information and other essential terms of an offer capable of acceptance so as to be binding.

16  The lack of pricing information distinguishes this case from *Biometics, LLC v. New Womyn, Inc.*,

17  112 F. Supp. 2d 869, 872 (E.D. Mo. 2000), relied on by Chiron, where the defendant's website

18  provided "extensive product information" and price information for the accused products. *Id.* at

19  872-73.

20         Nor are the other specific jurisdiction cases cited by Chiron applicable here. In *Wayne*

21  *Pigment Corp. v. Halox*, 220 F. Supp. 2d 931, 934 (E.D. Wis. 2002), the defendant had sent samples

22  of the accused product into the forum, thereby inducing their allegedly infringing use in the forum

23  state. In *Imagineering*, 797 F. Supp. at 331, the defendant had sold its accused rocking chairs in the

24  forum state. Whereas in those cases the defendants had induced or performed allegedly infringing

25  acts in the forum, here the only possible infringing acts by NGI have all occurred outside the

26  Northern District of California.[2]

27  ――――――――――――――

[2]   It should be noted that transmission of test results to the Northern District of California
28        cannot be an act of infringement – even if the tests themselves are accused – since
          information cannot in law qualify as a "product is made by a [patented process]" within the

-7-

(ii)   **NGI has never offered to perform the accused methods in the Northern District of California**

Even if, *arguendo*, NGI's advertising and promotional activities amounted to an contractual "offer to sell," they would not suffice to establish specific jurisdiction here, because NGI has never undertaken to perform the accused methods *in the Northern District of California*. To find a filiating "offer to sell" a court must examine both the place of the offer and the place of the contemplated performance. For example, if NGI had made a contractual offer, in the Northern District of California, to perform an accused HIV test outside the United States, the offer would not constitute an act of infringement under § 271(a), since the contemplated performance would not occur within the territory of the United States. *See Quality Tubing, Inc. v. Precision Tube Holdings Corp.*, 75 F. Supp. 2d 613, 621-625 (S.D. Tex. 1999). Similarly, even if NGI had made a contractual offer, in the Northern District of California, to perform an accused HIV test elsewhere in the United States, the offer would not constitute an act of infringement in the Northern District.

Since NGI has never used, sold, or offered to sell the claimed methods in the Northern District of California, its activities would not create specific personal jurisdiction if this district were a separate state.

2.   **NGI Would Not be Subject to General Personal Jurisdiction in This District If the Northern District of California Were a Separate State**

Chiron has failed to carry its heavy burden of showing that NGI has the degree and kind of systematic and continuous contacts with this district that would justify the exercise of general personal jurisdiction and permit the maintenance of an action unrelated to those contacts.

It is well established that the standard for establishing general jurisdiction is "fairly high" and "requires that the defendant's contacts be the sort that approximate physical presence." *Bancroft &*

---

meaning of § 271. *See Bayer AG v. Housey Pharms., Inc.*, 340 F.3d 1367, 1377 (Fed. Cir. 2003); *Moldflow*, 2003 WL 23010243 at *10 (personal jurisdiction cannot be predicated on sending information into the forum). Therefore, Chiron errs by relying on non-patent cases where the injurious instrumentality itself was transmitted into the forum state. *See Urspruch v. Greenblum*, 968 F. Supp. 707 (S.D. Ga. 1996) (medical malpractice action where allegedly false cytology report was sent to, and relied upon in, the forum state); *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883 (6th Cir. 2002) (trademark infringement suit where the actionable harm arose from the defendant's interactions via its website with customers in the forum state).

1   *Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (finding no general

2   jurisdiction where defendants website was "'passive,' i.e., consumers cannot use it to make

3   purchases."). Engaging in commerce with residents of the forum will not justify general jurisdiction,

4   since that is not in and of itself "the kind of activity that approximates physical presence within the

5   state's borders." *Id.*

6           As the Ninth Circuit noted: "[N]o court has ever held that the maintenance of even a

7   substantial sales force within the state is a sufficient contact to assert jurisdiction in an unrelated

8   cause of action." *Congoleum Corp. v. DLW Aktiengesellschaft*, 729 F.2d 1240, 1242 (9th Cir. 1984)

9   (finding no general jurisdiction where defendant, itself and through sales agents, solicited orders,

10  promoted its products through the mail and a showroom display, and attended trade shows and sales

11  meetings). In view of this strict standard, "[c]ommercial contact absent other indicia of corporate

12  presence is typically not sufficient to establish general jurisdiction." *Metro-Goldwyn-Mayer Studios*

13  *Inc. v. Grokster, Ltd.*, 243 F. Supp. 2d 1073, 1084 (C.D. Cal. 2003) (finding no general jurisdiction

14  even though the defendant "engages in a continuous stream of commercial contact with the forum

15  state" including providing software and executing licensing agreements "with a large number of

16  California residents," operated a website from which its software could be downloaded, and used in-

17  state legal and public relations representatives).

18          It is undisputed that NGI has no physical presence in this district. *See* King Decl. ¶ 5 (NGI

19  has no premises or facilities, no postal address, telephone number, bank accounts, agents for service

20  of process, or employees in the Northern District of California). That some of NGI's customers,

21  such as Roche, have offices that are located in the Northern District shows at most that NGI does

22  business *with* – rather than *in* – this district. *See Bancroft & Masters*, 223 F.3d at 1086 ("These

23  agreements [with forum residents] constitute doing business *with* California, but do not constitute

24  doing business *in* California."). *Accord Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408,

25  416-17 (1984) (finding no general jurisdiction over defendant corporation that sent executives to

26  forum state to negotiate contracts, purchased equipment in the forum, and sent personnel into the

27  forum for training). Nor can general jurisdiction be predicated indirectly on the fact that some of

28

-9-

1   NGI's customers, such as Aventis, in turn have contacts with the Northern District of California.

2   *See* Opp. at 9. As the Federal Circuit explained:

3           [D]oing business with a company that does business in Minnesota is
            not the same as doing business in Minnesota. Indeed . . . the Supreme

4           Court has made clear that contacts resulting from "the unilateral
            activity of another party or third person" are not attributable to a

5           defendant.

6   *Red Wing Shoe Co. v. Hockerson-Halberstadt Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998) (citing

7   *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). The Ziccardi affidavit, which Chiron

8   obtained from Aventis in discovery, shows that "NGI does not participate in, direct, or control the

9   plasma donation process" by which Aventis collects its raw material (plasma), whether in Oakland,

10  CA or at any ABS [Aventis Bio-Services] Center. Ziccardi Decl. ¶ 4. It is Aventis alone that

11  collects the plasma from donation centers, processes it in Indianapolis, IN, and then delivers it to

12  NGI in Knoxville, TN for testing. *Id.* ¶ 5. The forum-related contacts of Aventis are not attributable

13  to NGI for jurisdictional purposes.

14          Moreover, the record shows that NGI performs a very small proportion – less than one-half

15  of a percent – of its nucleic acid testing for customers in the Northern District of California.[3] This

16  further cuts against the exercise of general jurisdiction. *See Stairmaster Sports/Med. Prods., Inc. v.*

17  *Pacific Fitness Corp.*, 916 F. Supp. 1049, 1052-53 (W.D. Wash. 1995) (finding no general

18  jurisdiction where defendant sold about three-percent of its total sales volume in the forum through

19  three independent distributors), *aff'd,* 78 F.3d 602 (Fed. Cir. 1996) (Table).

20          Chiron advances several flawed arguments in an attempt to justify general jurisdiction. First,

21  Chiron inappropriately relies on *LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369 (Fed. Cir.

22  2000). *See* Opp. at 7. But in *LSI*, the defendant actually employed distributors in the forum state

23  and was accordingly held subject to general jurisdiction. *See id.* at 1370 ("It [defendant] employs

24  multiple distributors in Ohio . . . ."); *see also LSI Indus., Inc. v. Hubbell Lighting, Inc.*, 64 F. Supp.

25  2d 705, 706 (S.D. Ohio 1999) ("It [defendant] maintains a national sales force, which includes

26  ───────────────

27  [3]   *See* Chiron Opp. at 3 (since October, 2001, NGI has conducted some 2,200 tests for
            customers located in the Northern District); Aicher Depo (Haskett Decl., Exh. B) at 92 (in the

28          same period, NGI has performed a total of 450,000 to 500,000 nucleic acid tests).

1  agents in Ohio . . . ."), *rev'd*, 232 F.3d 1369 (Fed. Cir. 2000).  Here, by contrast, it is undisputed that

2  NGI has no employees in the Northern District.  Plaintiff's reliance on *AMP Inc. v. Methode Elecs.*

3  *Inc.*, 823 F. Supp. 259 (M.D. Pa. 1993) is also unpersuasive.  In *AMP*, the defendant "knowingly

4  ship[ped] products into [the forum state] on a regular basis . . . ." *id.* at 268, unlike NGI, whose

5  business concerns testing services and not physical products.  *See Red Wing Shoe*, 148 F.3d at 1362

6  (finding no jurisdiction over a defendant whose product "is a covenant not to sue, not a shoe

7  incorporating the patented technology" and therefore "never enters the stream of commerce.").

8      Finally, Chiron makes an unwarranted attempt to attribute to NGI the forum contacts of

9  LabCorp Holdings (NGI's corporate parent) and LabCorp (a subsidiary of LabCorp Holdings).  The

10  Federal Circuit has warned that "the corporate form is not to be lightly cast aside" and that courts

11  must "start from the general rule that the corporate entity should be recognized and upheld, unless

12  specific, unusual circumstances call for an exception." *Aarotech*, 160 F.3d at 1380 (quoting

13  *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 552 (Fed. Cir. 1990)).  Chiron has

14  utterly failed to identify any "specific, unusual circumstances" or any misuse of the corporate form,

15  but instead recounts the common incidents of corporate affiliation.  For instance, Chiron recites the

16  fact that NGI's Board Members are officers of LabCorp Holdings, and that the Chief Executive

17  Officer of NGI reports to an officer of its corporate parent.  Opp. at 9.  But as the Supreme Court

18  explained: "It is entirely appropriate for directors of a parent corporation to serve as directors of its

19  subsidiary . . . ." *United States v. Bestfoods*, 524 U.S. 51, 69 (1998) ) (quoting *America Protein*

20  *Corp. v. AB Volvo*, 844 F.2d 56, 57 (2d Cir. 1988).

21      Chiron fails to articulate any specific legal rationale for its attempt to pierce the corporate

22  veil, and relies on a single out-of-district case in which a subsidiary was held to be the general agent

23  of its corporate parent.  Opp. at 9-10, citing *Modesto City Schools v. Riso Kagaku Corp.*, 157

24  F. Supp. 2d 1128, 1132-1133 (E.D. Cal. 2001).  But the situation here is completely opposite.  NGI

25  is not the corporate parent, but rather is the wholly-owned subsidiary, of LabCorp Holdings.  It is

26  simply absurd to suggest that NGI so utterly dominates and controls its corporate parent that

27  LabCorp Holdings' forum contacts should be attributed to NGI.  *See Doe v. Unocal*, 248 F.3d 915,

28  926 (9th Cir. 2001) ("An alter ego or agency relationship is typified by parental control of the

-11-

subsidiary's internal affairs or daily operations."); *accord Rotec*, 215 F.3d at 1256 (in testing for an agency relationship, the court must decide "whether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal."). Chiron adduces no evidence that NGI has the right to control the activities of LabCorp or LabCorp Holdings, which cannot be regarded as general agents for NGI.[4] Accordingly, venue as to NGI is improper under § 1400(b).

## III.   CONCLUSION

For the reasons set forth above and in the Defendants' opening brief, the motion to transfer should be granted. In the alternative, NGI should be dismissed from this action for improper venue.

Dated: January 14, 2004

Respectfully submitted,

HELLER EHRMAN WHITE & McAULIFFE LLP

By: /s/ M. Patricia Thayer

333 Bush Street
San Francisco, California 94104-2878

James W. Dabney
Stephen S. Rabinowitz
FRIED FRANK HARRIS SHRIVER
  & JACOBSON LLP
One New York Plaza
New York, New York  10004

Attorneys for Defendants

415010 4

---

[4]   Nor is marketing a vital function for NGI, as Chiron contends. On the contrary, Mr. Aicher, the CEO of NGI, explained why NGI did not need to market: "We don't market. . . . We're the only approved – FDA approved [test] for HIV and HCV [screening]. So I – my hands are full satisfying that particular market segment. They have nowhere else to go." Aicher Depo. (Haskett Decl., Exh. B) at 89:16-20; 92:1-3.